In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3719

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDRE L. JONES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 11-cr-30009-1—**Richard Mills**, *Judge.*

ARGUED JUNE 6, 2012—DECIDED JULY 27, 2012

Before EASTERBROOK, *Chief Judge*, and WOOD and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Andre Jones was convicted of unlawfully possessing a firearm as a felon and was sentenced as an armed career criminal based in part on a prior Illinois conviction for vehicular fleeing, which the district judge counted as a third violent felony under the residual clause of the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e)(2)(B)(ii). This classification triggered a mandatory minimum sentence of 15 years

and raised the statutory maximum to life. The judge sentenced Jones to 184 months, just above the mandatory minimum.

Jones challenges only his sentence, raising a vagueness challenge to the residual clause. More specifically, he argues that the residual clause of the ACCA contains no discernible standard to guide its application and therefore permits arbitrary enforcement in violation of the Due Process Clause of the Fifth Amendment. This position has at least one notable proponent. *See Sykes v. United States*, 131 S. Ct. 2267, 2284 (2011) (Scalia, J., dissenting). But a majority of the Supreme Court has rejected the argument, albeit only in response to dissents by Justice Scalia, not in the more formal sense of deciding an explicit void-for-vagueness challenge. *See id.* at 2277. Perhaps Jones can persuade the Court to directly consider the issue, but our hands are tied. We affirm Jones's sentence.

## I. Background

On January 3, 2011, police officers in Springfield, Illinois, initiated a traffic stop of a vehicle in which Jones was riding as a passenger. As the officers began following the car, Jones threw a handgun out the window. When the driver pulled over, the officers obtained consent to search from both Jones and the driver. Jones had an empty handgun holster around his waist and 18 grams of marijuana in his shoe. The officers then retraced their route and retrieved the handgun from a driveway a few blocks away where Jones had tossed it. Jones admitted the gun was his.

Jones was indicted on several drug and gun charges. He eventually entered a guilty plea to one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e), and the government dismissed the other charges. The felon-in-possession offense normally carries a ten-year maximum and no minimum penalty. *See* 18 U.S.C. § 924(a)(2). But if the defendant has three prior convictions for "violent felonies" as defined in the ACCA, he is subject to a mandatory minimum sentence of 15 years in prison and the maximum penalty is raised to life. *See id.* § 924(e)(1). Jones preserved his right to challenge the application of the ACCA at sentencing.

Jones's presentence report recommended that he be sentenced as an armed career criminal based on three qualifying violent felonies: Illinois convictions for robbery, aggravated robbery, and aggravated vehicular fleeing from a police officer. Jones conceded that the first two convictions qualified as violent felonies under § 924(e)(2)(B)(i). That subsection defines the term "violent felony" as any crime punishable by more than one year in prison that "has as an element the use, attempted use, or threatened use of physical force against the person of another." He also acknowledged that under our decision in *Welch v. United States*, 604 F.3d 408, 425 (7th Cir. 2010), his vehicular-fleeing conviction qualified as a violent felony under the so-called "residual clause" of § 924(e)(2)(B)(ii). Under that provision a "violent felony" includes any crime punishable by more than one year in prison that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that*

*presents a serious potential risk of physical injury to another.*"
18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

Jones argued that *Welch* notwithstanding, the residual clause is unconstitutionally vague and thus unenforceable under the Due Process Clause of the Fifth Amendment. The judge rejected this argument as implicitly foreclosed by the Supreme Court's decision in *Sykes* and sentenced Jones to 184 months in prison. This sentence fell just below the advisory guidelines range of 188 to 235 months and just above the ACCA's mandatory minimum of 180 months.

## II. Discussion

Under the ACCA a felon who unlawfully possesses a firearm in violation of § 922(g)(1) is subject to steeply enhanced penalties—a minimum sentence of 15 years and a maximum of life—if he has three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The statute defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B). The final clause of this definition has come to be known as the "residual clause." Subsection (ii) of the statute lists four specific but disparate crimes followed by the catchall "residual clause" that sweeps in any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

The residual clause has eluded stable construction. The Supreme Court has heard four ACCA residual-clause cases in fairly rapid succession in an effort to clarify the open-ended language of the clause and to establish a framework for how to distinguish crimes that qualify from crimes that do not. *See Sykes*, 131 S. Ct. at 2270 ("The instant case is another in a series in which the Court is called upon to interpret § 924(e) . . . ."); *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008); *James v. United States*, 550 U.S. 192 (2007). In *Sykes*, the latest in the series, the Court held that to qualify as a violent felony under the residual clause, a crime must "involve[] a potential risk of physical injury similar to that presented by burglary, extortion, arson, and crimes involving the use of explosives." 131 S. Ct. at 2277. In other words, the defendant must have been convicted of an offense that carries a risk of injury similar in kind and degree as the crimes specifically mentioned in the statute. *Id.* at 2275 ("In general, levels of risk divide crimes that qualify from those that do not.").

Applying this "similarity of risk" principle, the Court held that the Indiana crime of vehicular fleeing qualifies as a violent felony under the residual clause. *Id.* at 2277. To reach this conclusion, the Court undertook what it

called a "commonsense" comparison of the risk of injury posed by vehicular fleeing and by the other crimes specified in the residual clause. *Id.* at 2273-74. The Court also looked to statistical data about the rate of injury from police chases, which, though "not dispositive," served to "confirm the commonsense conclusion" that the crime of vehicular fleeing poses a similar risk of injury as the offenses listed in the statute. *Id.* at 2274-75.

Justice Scalia dissented, at length explaining his conclusion that the residual clause "fails to speak with the clarity that criminal proscriptions require." *Id.* at 2288 (Scalia, J., dissenting). The statute's risk-of-injury requirement uses "the word 'otherwise,'" but this connector is "'preceded by four confusing examples that have little in common with respect to the supposedly defining characteristic.'" *Id.* (quoting *James*, 550 U.S. at 230 n.7 (Scalia, J., dissenting)). He gave the following example to illustrate the statute's lack of clarity: "'The phrase "shades of red," standing alone, does not generate confusion or unpredictability; but the phrase "fire-engine red, light pink, maroon, *navy blue*, or colors that otherwise involve shades of red" assuredly does so.'" *Id.* (quoting *James*, 550 U.S. at 230 n.7 (Scalia, J., dissenting)).

Justice Scalia then traced the Court's earlier efforts to discern a clear standard for deciding residual-clause cases and noted that the formula kept shifting.[1] *Id.*

---

[1] Without belaboring the point, here is a shorthand version of the decisional history: In *James* the Court held that a crime

(continued...)

at 2284-86 (Scalia, J., dissenting) (discussing *James*, *Begay*, and *Chambers*). In his view the Court's latest effort in *Sykes* had produced only "a fourth ad hoc judgment that will sow further confusion." *Id.* at 2284 (Scalia, J., dissenting). The Court's "repeated inability to craft a principled test out of the statutory text" was proof positive of the statute's "incurable vagueness." *Id.* at 2287 (Scalia, J., dissenting). The time had come, he said, to "admit that [the] ACCA's residual provision is a drafting failure and declare it void for vagueness." *Id.* at 2284 (Scalia, J., dissenting); *see also Derby v. United States*, 131 S. Ct. 2858, 2860 (2011) (Scalia, J., dissenting from denial of certiorari) ("I would grant certiorari, declare ACCA's residual provision to be unconstitutionally

---

[1]  (...continued)

will involve the required level of risk when "the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses." *James v. United States*, 550 U.S. 192, 203 (2007). In *Begay* the Court held that to qualify under the residual clause, the crime must be "purposeful, violent, and aggressive." *Begay v. United States*, 553 U.S. 137, 145 (2008). In *Chambers* the Court used a combination of these approaches and also endorsed the use of statistics to prove the required similarity of risk. *Chambers v. United States*, 555 U.S. 122, 129 (2009). In *Sykes* the Court recharacterized the "purposeful, violent, and aggressive" formula as merely descriptive of the result in *Begay* and retreated from the "closest analog" approach of *James* in favor of what might best be described as a "holistic" comparison of the risk posed by the proposed ACCA predicate and the enumerated offenses. *See Sykes v. United States*, 131 S. Ct. 2267, 2273-76 (2011).

vague, and ring down the curtain on the ACCA farce playing in federal courts throughout the Nation.").

Jones asks us to adopt Justice Scalia's position and declare the residual clause unconstitutionally vague under the Due Process Clause of the Fifth Amendment. "It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)). A law "fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966).

Vagueness doctrine rests on concerns about fair notice and arbitrary enforcement. "A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) ("'[A] penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" (alterations in original) (quoting *Kolender v. Lawson*, 461 U.S. 352,

357 (1983))). The concerns about notice and arbitrary enforcement arise not only in challenges to statutes defining substantive criminal liability but also in challenges to penalty provisions like the ACCA. *See, e.g.*, *Batchelder*, 442 U.S. at 123 ("[V]ague sentencing provisions may pos[e] constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."); *United States v. Evans*, 333 U.S. 483, 486-87 (1948).

A threshold difficulty for Jones's vagueness claim is that at the time of his offense, we had already held that the Illinois crime of aggravated vehicular fleeing qualifies as a violent felony under the residual clause of the ACCA. *See Welch*, 604 F.3d at 425 ("[W]e stand with the majority of circuits that have held that intentional vehicular fleeing is a violent felony within the meaning of the ACCA."). Our decision in *Welch* thus gave Jones "a reasonable opportunity to know" of his career-offender status under the residual clause, and also served to "prevent arbitrary and discriminatory enforcement" of the statute—at least in prosecutions for conduct, like Jones's, committed *after* the decision was issued. *United States v. Plummer*, 581 F.3d 484, 488 (7th Cir. 2009) (quotation marks omitted).

Jones acknowledges *Welch* but argues that his challenge must be evaluated by reference to the *statutory text* alone, not judicial precedent interpreting and applying it. To be sure, the focus of any due-process vagueness challenge is statutory clarity. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[A]n enactment

is void for vagueness if its prohibitions are not clearly defined."); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921); *Todd v. United States*, 158 U.S. 278, 282 (1895) ("[B]efore a man can be punished, his case must be plainly and unmistakably within *the statute*." (emphasis added) (quotation marks omitted)). But it is well-established that "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *United States v. Lanier*, 520 U.S. 259, 266 (1997); *see also Skilling*, 130 S. Ct. at 2931 n.43 ("[C]ases 'paring down' federal statutes to avoid constitutional shoals are legion."). Stated differently, a vague statute may be saved by a "reasonable narrowing interpretation," *Skilling*, 130 S. Ct. at 2931 n.43, provided that the limiting interpretation is "fairly possible," *Boos v. Barry*, 485 U.S. 312, 331 (1988), and not "plainly contrary to the intent of Congress," *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Still, "there are limits beyond which we cannot go in finding what Congress has not put into so many words or in making certain what it has left undefined or too vague for reasonable assurance of its meaning." *Evans*, 333 U.S. at 486. This principle is a necessary feature of the separation of powers, and in this context, it reinforces the rule that there are no common-law crimes. "In our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions." *Id.*; *see also Lanier*, 520 U.S. at 267 n.6 ("Federal crimes are defined by Congress, not the courts . . . ."). But "the margin between the necessary and proper judicial function of construing statutes and

that of filling gaps so large that doing so becomes essentially legislative, is necessarily one of degree." *Evans,* 333 U.S. at 486-87.

What's important for our purposes, however, is that *Welch* settled the question whether the Illinois crime of vehicular fleeing is a violent felony under the ACCA *before* Jones was caught with a gun. "The root of the vagueness doctrine is a rough idea of fairness," *Colten v. Kentucky*, 407 U.S. 104, 110 (1972), and one who violates a "settled interpretation[]" of a statute is "'certainly . . . in no position to say that [he] had no adequate advance notice that [he] would be visited with punishment,'" *Lanier*, 520 U.S. at 267 (quoting *Screws v. United States*, 325 U.S. 91, 105 (1945)).

That alone might be enough to resolve the matter. Vagueness challenges are normally evaluated in light of the particular facts of the case, not in general. *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718-19 (2010); *Chapman v. United States*, 500 U.S. 453, 467 (1991); *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *United States v. Powell*, 423 U.S. 87, 92 (1975); *Parker v. Levy*, 417 U.S. 733, 757 (1974). "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard*, 486 U.S. at 361. This principle is often stated in language describing the form of the claim. For example, the Supreme Court has said that when a statute is challenged on vague-

ness grounds, "the statute is judged on an as-applied basis." *Id.*; *see also Humanitarian Law Project*, 130 S. Ct. at 2718-19 ("We consider whether a statute is vague as applied to the particular facts at issue . . . ."); *Chapman*, 500 U.S. at 467 (A vagueness claim "must be evaluated as the statute is applied to the facts of th[e] case."); *Plummer*, 581 F.3d at 488 (vagueness challenges "are analyzed as-applied"). On the strength of this line of cases, the government maintains that because *Welch* gave Jones fair notice that the residual clause would apply to him, his vagueness challenge fails "as applied" and he cannot bring a "facial" challenge to the statute.

This makes sense as a matter of the form and structure of the claim. A due-process claim usually challenges executive enforcement action. *See* Nicholas Quinn Rosenkranz, *The Objects of the Constitution*, 63 STAN. L. REV. 1005, 1041-43 (2011). "As a matter of grammar and structure, the Due Process Clause is not an *absolute* restriction on *legislative* power, like the First Amendment; it is, at least at its core, a *conditional* check on *executive* power . . . ." *Id.* at 1042-43 (emphases added). *Cf.* Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 YALE L.J. 1672, 1722 (2012) (explaining that "the Due Process Clause was originally understood to apply to legislative as well as executive and judicial acts"). In a vagueness claim, the challenger contends that a legislative enactment is too vague and standardless to be enforced as law; applying the vague statute to him deprives him of his liberty or property without due process of law. Thus, the Supreme Court has held that "[o]ne to whose conduct a statute

clearly applies may not successfully challenge it for vagueness." *Parker*, 417 U.S. at 756. Putting the point slightly differently, a person "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Humanitarian Law Project*, 130 S. Ct. at 2719 (quoting *Hoffman Estates*, 455 U.S. at 495).

And yet the Supreme Court regularly decides due-process vagueness claims without regard to the facts of the case. *See, e.g., Skilling*, 130 S. Ct. at 2925-34; *City of Chicago v. Morales*, 527 U.S. 41, 55-64 (1999); *Kolender*, 461 U.S. at 357-62; *Smith v. Goguen*, 415 U.S. 566, 572-78 (1974); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *L. Cohen Grocery Co.*, 255 U.S. at 89-91. These cases are hard to reconcile with the rule that vagueness challenges must be evaluated "as applied" and that "facial" vagueness challenges are improper. The key point in this line of cases seems to be that a criminal statute that "simply has no core" and lacks "any ascertainable standard for inclusion and exclusion" is impermissibly vague regardless of the application facts in the case. *Goguen*, 415 U.S. at 578. Such a statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates*, 402 U.S. at 614.

This raises a substantive point about the nature of the claim. The Due Process Clause "is essentially a separation of powers provision." Rosenkranz, *The Objects of the Constitution*, 63 STAN. L. REV. at 1043. "The clause

protects individual rights by assigning and channeling federal power." *Id.* On this understanding, due-process vagueness doctrine guards against impermissible delegations of lawmaking authority. *See* Chapman & McConnell, *Due Process as Separation of Powers*, 121 YALE L.J. at 1806 ("Vague statutes have the effect of delegating lawmaking authority to the executive."); *L. Cohen Grocery Co.*, 255 U.S. at 86-87 (a vague statute "amount[s] to a delegation by Congress of legislative power to courts and juries to determine what acts should be held to be criminal and punishable"). Seen in this light, Jones's vagueness challenge does not depend on the particular facts of his case. The residual clause, he asserts, is so vague and standardless that Congress has impermissibly delegated the legislative power to "defin[e] crimes and fix[] penalties." *Evans*, 333 U.S. at 486. With no ascertainable legislative standard, judicial decisions about which crimes count as violent felonies and which do not—*including* our decision in *Welch*—are essentially ad hoc and arbitrary.

The doctrine surrounding the "facial" and "as applied" forms of judicial review is "currently a subject of hot debate, both in the Supreme Court and among commentators." Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*, 99 CALIF. L. REV. 915, 917 (2011). *See also Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010); Nicholas Quinn Rosenkranz, *The Subjects of the Constitution,* 62 STAN. L. REV. 1209, 1227-35 (2010); Luke Meier, *Facial Challenges and Separation of Powers*, 85 IND. L. J. 1557 (2010); Gillian E. Metzger, *Facial and As-Applied Challenges Under the Roberts Court*, 36 FORDHAM URB. L.J. 773 (2009); David L.

Franklin, *Looking Through Both Ends of the Telescope: Facial Challenges and the Roberts Court*, 36 HASTINGS CONST. L.Q. 689 (2009). *See generally* Symposium, *The Roberts Court: Distinguishing As-Applied Versus Facial Challenges*, 36 HASTINGS CONST. L.Q. 563 (2009). We do not need to weigh in on the debate here. Even if we set *Welch* to one side, as an intermediate appellate court in the judicial hierarchy, we cannot sustain Jones's vagueness challenge to the residual clause.

Although the Supreme Court has not formally considered the issue, it has twice responded to Justice Scalia's argument that the residual clause is unconstitutionally vague. In *James* the Court said this:

> While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his *amici*—that the residual provision is unconstitutionally vague. See *post*, at 230 [(Scalia, J., dissenting)]. The statutory requirement that an unenumerated crime "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another" is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

550 U.S. at 210 n.6. And just last year, in *Sykes*, the Court said that although the residual clause may sometimes be "difficult for courts to implement," it nonetheless "states an intelligible principle," "provides guidance that allows a person to 'conform his or her conduct to the law,' " and

"is within congressional power to enact." 131 S. Ct. at 2277 (quoting *Morales*, 527 U.S. at 58 (plurality opinion)).

Jones points out that the Supreme Court has never received briefing on the vagueness issue. True, but the Court's statements in *James* and *Sykes* are direct, and because Justice Scalia so thoroughly developed the argument, we are reluctant to treat the Court's responsive statements as mere dicta. Indeed, they are not dicta in the traditional sense. The question presented in *James* and *Sykes* required the Court to decide both the kind and degree of risk necessary for a conviction to fall within the scope of the residual clause. A possible answer in both cases was that the residual clause is an irreparable drafting failure and too vague to be enforced. *See id.* at 2284 (Scalia, J., dissenting); *James*, 550 U.S. at 230 (Scalia, J., dissenting). For us to say that the residual clause is unconstitutionally vague—essentially, that it lacks a coherent, ascertainable standard—would be to say that the Supreme Court failed to ascertain and apply a standard in *James*, *Begay*, *Chambers*, and *Sykes*. Justice Scalia may be right, but attributing failure to the Supreme Court is not within our authority. Jones must seek relief from the high court.

AFFIRMED.